**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DANIEL REED,**

    **Petitioner,**

**v.**                                        **CASE NO. 6:09-cv-1083-Orl-35GJK**

**SECRETARY, DEPARTMENT OF
CORRECTIONS,** *et al.***,**

    **Respondents.**

## ORDER

    Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11). Petitioner filed a reply to the response (Doc. No. 19).

    Petitioner alleges five claims for relief in his habeas petition: (1) the trial court abused its discretion by denying his second motion for continuance; (2) trial counsel rendered ineffective assistance by failing to object to the principal jury instruction; (3) trial counsel rendered ineffective assistance by failing to investigate and uncover witnesses; (4) trial counsel rendered ineffective assistance by failing to depose and call Charline Joseph as a witness; and (5) trial counsel rendered ineffective assistance by failing to impeach Agent Carlies. For the following reasons, the petition is denied.

## I. Procedural History and Facts Adduced at Trial

Petitioner was charged by information with two counts of delivery of 3, 4 - Methylenedioxy Methamphetamine ("MDMA" or "ecstasy"). At trial, Agent James Carlies testified that for approximately five months, he and another agent conducted an undercover investigation at Cleo's, a strip club. Agent Carlies said that on July 29, 2004, during the course of the investigation, he was approached by Charline Joseph ("Joseph"), a dancer at Cleo's, who told him that someone in Cleo's was selling ecstasy for $14 a pill. Agent Carlies stated that he asked Joseph if the ecstasy was good, to which she responded that she would purchase one and try it out. Agent Carlies testified that Joseph left him and subsequently returned two to three minutes later with a pill in her hand which she told Agent Carlies she would take. Agent Carlies said that he told Joseph that he wanted to purchase two of the ecstasy pills after she told him that the pill was working.

Agent Carlies testified that he then watched Joseph walk to a pool table and have a conversation with Petitioner. Agent Carlies stated that he saw a hand exchange between Joseph and Petitioner after which Joseph returned to Agent Carlies and gave him two pills and said they were $14 each. Agent Carlies gave Joseph $40, and she walked back to Petitioner and another hand exchange occurred. Agent Carlies said that Joseph returned to him again with $12 in change, which he told her she could keep.

Agent Carlies testified that later in the evening, Joseph told him that she would introduce him to the man who sold her the pills and she proceeded to introduce him to Petitioner. According to Agent Carlies, he told Petitioner that he wanted to purchase

more pills and Petitioner gave him his cellular phone number, which Agent Carlies programmed into his cellular phone before leaving Cleo's.

Agent Carlies stated that he called Petitioner on August 2, 2004, at the number Petitioner had given him and told Petitioner he wanted to buy fifty pills. Petitioner agreed to sell pills to Agent Carlies for $10 each. Agent Carlies testified that he called Petitioner back on August 3, 2004, and Petitioner told him at that time he only had twenty pills. Agent Carlies said that he called Petitioner again that same day, told Petitioner he wanted to buy five pills, and the two agreed to meet at Cleo's.

Agent Carlies testified that he went to Cleo's that night and waited for Petitioner, but he left after Petitioner failed to show up. Agent Carlies said that he called Petitioner after leaving Cleo's, and Petitioner, who was in Cleo's, asked him where he was. Agent Carlies testified that he returned to Cleo's and purchased five ecstasy pills from Petitioner in the bathroom for $70. A substance analyst testified that the seven pills provided to the Florida Department of Law Enforcement by Agent Carlies were tested and were ecstasy.

The jury found Petitioner guilty as charged. The state court sentenced Petitioner to concurrent twelve-year terms of imprisonment. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The state court denied the motion. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

4

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

5

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. Analysis

### A. Claim One

Petitioner asserts that the state trial court erred by denying his second motion to continue the trial. Petitioner maintains that he was denied his right to counsel based on the trial court's denial of his motion to continue. Respondents contend that this claim is procedurally barred from review as it was not raised as a federal claim in the state courts.

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has

6

exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (i)    there is an absence of available State corrective process; or
>
>             (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted

in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

In the instant case, Petitioner raised this claim on direct appeal in the state court, and the Florida Fifth District Court of Appeal affirmed *per curiam*. However, Petitioner did not raise the claim as a federal constitutional issue, and he only cited state law in support of the claim. Thus, claim one is procedurally barred from review by this Court as it was not exhausted in the state court and would be clearly barred if raised in the state court. Thus, absent an exception to the procedural default bar, claim one is barred from review by this Court. Petitioner has failed to demonstrate either cause or prejudice to overcome the procedural default. Furthermore, Petitioner has not demonstrated that he is actually innocent. Accordingly, claim one is procedurally barred from review by this Court.

Alternatively, the Court notes that the claim would be denied pursuant to Section 2254(d) if it were not procedurally barred. Florida courts have held:

> There are few rights more fundamental than the right of an accused to present witnesses in his or her own defense*. See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed.2d 297 (1973). In order to prevail in a motion for continuance, the defendant must show: (1) prior due diligence to obtain the witnesses' presence; (2) that substantially favorable testimony would be forthcoming; (3) that the witnesses were available and willing to testify; and (4) that the denial of the continuance

caused material prejudice. *See United States v. O'Neill*, 767 F.2d 780, 784 (11th Cir. 1985); *Smith v. State*, 762 So. 2d 929, 931 (Fla. 4th DCA 2000), *review denied*, 786 So. 2d 1188 (Fla. 2001).

*Jenkins v. State*, 872 So. 2d 388, 389-90 (Fla. 4th DCA 2004). Likewise, the Supreme Court of the United States has held that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citing *Avery v. Alabama*, 308 U.S. 444 (1940)). The Court further stated:

> There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Id.* (citing *Nilva v. United States*, 352 U.S. 385 (1957)).

In the instant case, the record establishes that defense counsel moved to continue the trial a second time in April 2005, and he renewed the motion on the date the trial began, April 26, 2005. (App. B at 6.) Defense counsel noted that he sought the continuance because he had just recently entered an appearance in the case, had recently received the discovery, and wanted to take the deposition of a witness. *Id.* at 6-7. The trial court denied the motion, reasoning that counsel had entered an appearance in the case in February, the case had been continued prior to counsel's appearance, and a continuance had been granted in March to allow counsel to prepare for the trial in April. *Id.* at 7-8. The trial court further reasoned that the case was not complex and the person that defense counsel wanted to depose, Charline Joseph, was not a State witness and would have been able to assert her Fifth Amendment privilege against self-incrimination. *Id.* at 8.

Petitioner has not demonstrated that the trial court's denial of his motion to continue was either contrary to, or an unreasonable application of, clearly established federal law. As discussed more fully in claim four *infra*, there is no evidence that Joseph either could have provided exculpatory testimony or would have been willing to waive her right to remain silent if called as a witness. Moreover, Petitioner has not demonstrated that the denial of the continuance resulted in material prejudice. The case was not complex, and defense counsel ably challenged the State's case through cross-examination of the State's witnesses. Thus, this claim is denied as it is procedurally barred and otherwise without merit pursuant to Section 2254(d).

### B. Claim Two

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the principal jury instruction. In support of this claim, Petitioner contends that the information did not charge him as a principal, and as such, he could not be convicted as a principal. Petitioner maintains that charging the principal jury instruction served to amend the information.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim, reasoning that the evidence warranted giving the principal jury instruction. (App. O at 6-7.) The state court concluded that it was proper to give the principal instruction and counsel had no basis on which to object to the instruction. *Id.* at 7.

The Supreme Court of Florida has held that "[u]nder Florida law, a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) (citing *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971)).

Thus, under Florida law, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." *Watkins v. State*, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (citing *Roby*, 246 So. 2d at 571, and *Jacobs v. State*, 184 So. 2d 711, 715 (Fla. 1st DCA 1966)).

In the instant case, the information charged Petitioner with the substantive offense of delivery of ecstasy in violation of Section 893.03(1)(a)(1), Florida Statutes. Moreover, the evidence admitted at trial established that on July 29, 2004, Petitioner gave Joseph two ecstasy pills in exchange for $28, and Joseph in turn gave the pills to Agent Carlies. Thus, pursuant to Florida law, the state court properly gave the jury the principal jury instruction. Petitioner has not cited any Florida law, nor is this Court aware of any such law, requiring the information or indictment to charge that the defendant committed an offense as a principal. As such, the Court cannot conclude that counsel was deficient for failing to object to the principal jury instruction or that prejudice resulted from counsel's failure to do so. Accordingly, this claim is denied pursuant to Section 2254(d).

### C. Claims Three and Five

In claim three, Petitioner contends that trial counsel rendered ineffective assistance by failing to investigate and uncover witnesses. In support of this claim, Petitioner asserts that counsel failed to take efforts to locate witnesses at Cleo's who could have testified that Agent Carlies consumed alcohol nightly during the investigation. Petitioner further argues that counsel failed to review the voice mail messages that Agent Carlies left for himself, documenting his observations, during the course of the

investigation. Finally, Petitioner maintains that had counsel investigated, he would have learned that Cleo's plays loud music, which would have undermined Agent Carlies' testimony that he left voice mail messages to document what he observed. Similarly, in claim five, Petitioner asserts that trial counsel rendered ineffective assistance by failing to investigate and impeach Agent Carlies. Specifically, Petitioner argues that if counsel had investigated, he would have known that Agent Carlies had charged twenty seven or more drug related offenses during the course of the five-month investigation and had consumed alcohol during the investigation.

Petitioner raised these claims in his Rule 3.850 motion, and the state court denied relief pursuant to *Strickland*. The state court first reasoned that the trial court, at the conclusion of trial, asked Petitioner if counsel failed to investigate anything that Petitioner had requested him to do, and Petitioner responded negatively and affirmed that he was satisfied with counsel's representation. (App. O at 8.) The state court further noted that counsel in fact cross-examined Agent Carlies regarding the noise in Cleo's. *Id.* Finally, the state court determined that Petitioner's allegation that if counsel had investigated departmental records, he may have discovered evidence that Agent Carlies engaged in unprofessional behavior, was speculation and insufficient to demonstrate either deficient performance or prejudice. *Id.* at 3.

As an initial matter, the Court notes that Petitioner has failed to offer any evidence establishing that witnesses were available who would have testified that Agent Carlies consumed alcohol during the investigation. Likewise, there is no evidence that anything contained in Agent Carlies' investigation voice mail messages or departmental records would have refuted Agent Carlies' testimony. These contentions are purely

speculation. *See, e.g., Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

Moreover, the trial court asked Petitioner if counsel failed to investigate or pursue anything that he had requested, and Petitioner responded negatively. Petitioner clearly would have been aware at the time of trial of the matters he now asserts counsel should have investigated and presented at trial. Petitioner, however, did not bring these matters to the trial court's attention.

Petitioner also has failed to demonstrate that a reasonable probability exists that the outcome of the trial would have been different if counsel had further investigated and presented such evidence, assuming it existed. As discussed above, Agent Carlies testified that he observed Joseph talk to Petitioner and make a hand exchange, after which she returned to him and gave him two pills. Agent Carlies then gave Joseph $40, and she walked back to Petitioner at which time another hand exchange occurred. Joseph returned to Petitioner and offered to give him $12, the change from the sale.

Agent Carlies' testimony and identification of Petitioner as the perpetrator of the first transaction was supported by Agent Carlies' subsequent testimony that he actually spoke to Petitioner later that night and obtained his phone number so that he could purchase more pills. As a result, Agent Carlies was able to contact Petitioner and arrange to purchase additional ecstasy pills. Petitioner has not explained how the number of drug charges that resulted from the five-month investigation, whether the music was loud in the club, whether Agent Carlies left voice mail messages while in the club, and whether Agent Carlies consumed alcohol would have refuted Agent Carlies'

identification of Petitioner as the perpetrator in light of the fact that Agent Carlies testified that Petitioner gave him his phone number and thereby arranged the second drug transaction at a later date with Petitioner. In other words, even assuming that Agent Carlies had been impeached concerning his investigative methods or his behavior at Cleo's, such evidence still would not have refuted his testimony that Petitioner gave him his telephone number, and as a result, Agent Carlies later called Petitioner and purchased additional ecstasy pills from him. In sum, the Court concludes that Petitioner has failed to establish that the state court's denial of these claims is either contrary to, or an unreasonable application of, *Strickland.* Accordingly, claims three and five are denied.

### D.     *Claim Four*

Petitioner asserts that counsel rendered ineffective assistance by failing to depose and call Charline Joseph as a witness. Petitioner maintains that Joseph would have testified that Petitioner was not the person who sold ecstasy to her.

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief pursuant to *Strickland.* (App. O at 7-8.) The state court first reiterated that Petitioner told the trial court that he was satisfied with counsel and denied that counsel failed to investigate anything he requested. *Id.* at 7. The state court further reasoned that if Joseph had agreed to testify as Petitioner alleged she would, she would have been waiving her Fifth Amendment right to remain silent and could have been charged with delivery of ecstasy. *Id.* The state court noted that the State had not offered Joseph immunity to testify. *Id.* As such, the state court concluded that counsel was neither deficient for failing to call Joseph nor was Petitioner prejudiced by counsel's failure to do

15

so.  *Id.* at 8.

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony."  *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. Mar. 7, 1996).  "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified."  *Id.*

Petitioner has failed to present evidence of actual testimony or any affidavit from Joseph demonstrating that she would have offered exculpatory testimony.  Thus, Petitioner has not made the requisite factual showing as to this purported witness.  Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Furthermore, Petitioner has not demonstrated that the state court's determination is contrary to, or an unreasonable application of, clearly established federal law.  As noted by the state court, in order for Joseph to exculpate Petitioner by testifying that he was not the man who sold her ecstasy, she would have had to admit her own culpability.  Given that there is no indication Joseph had been provided immunity to testify, it is highly improbable that she would have waived her right to remain silent if called as a witness.  As such, in the absence of any evidence that Joseph would have offered exculpatory testimony, the Court concludes that Petitioner has failed to establish that counsel was

deficient for failing to depose or call her as a witness or that a reasonable probability exists that Petitioner would have been found not guilty had Joseph been called as a witness. Accordingly, claim four is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## *V.* *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a

constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Daniel Reed is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 19th day of October 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-1 10/19
Counsel of Record
Daniel Reed